IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Radiant Global Logistics, Inc.;

Plaintiff,

v.

Schmidt, Pritchard & Co., SP
Shipping, LLC, Michael Husslein,
Adrian Perez, and James Feltz;

Defendants.

Case No. 26-cv-01600

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Plaintiff Radiant Global Logistics, Inc. ("Radiant") moved for a temporary restraining order [4] enjoining Defendants Michael Husslein ("Husslein"), Adrian Perez ("Perez"), and James Felts ("Feltz") (collectively "the Individual Defendants") from breaching their restrictive covenants and enjoining Defendants Schmidt, Pritchard & Co. ("SP") and SP Shipping, LLC ("SP Shipping") (collectively "the Corporate Defendants") from tortious interference with Radiant's contractual relationships. Defendants were given notice of Radiant's motion and an opportunity to file a written response in opposition. [15]; [19]. Additionally, the parties were heard on this matter on February 17, 2026. For the reasons stated herein, Radiant's motion is denied.

**BACKGROUND**

Plaintiff Radiant is a global transportation and supply chain management company. [17] ¶ 17. On March 1, 2025, Radiant acquired Transcon Shipping Co., Inc.

1

("Transcon") and Radiant now operates Transcon as a wholly owned subsidiary. *Id.* ¶ 18. Transcon is a freight forwarder. *Id.* ¶ 19. In other words, Transcon operates as an international travel agent for its customers' freight by handling the logistics, documentation and compliance, and clearance processes, among other things. *Id.* The freight forwarding business operates through relationships with international agents, carriers, and customs house brokerages. *See id.* ¶¶ 20–26. Transcon built these relationships over its 29 years in business and many customers have repeatedly used Transcon's services for decades. *Id.* ¶ 20. Transcon alleges it had invested substantial resources in procuring and retaining these customers. *Id.* ¶¶ 30–31.

Defendant Husslein was hired at Transcon in 2004 as a Director of Sales for the Midwest Region. [1] ¶ 36. He transitioned to Director of Sales for the East Region in 2016 and was promoted to Assistant Vice President, Marketing in 2022. *Id.* As AVP, Husslein's responsibilities included overseeing Transcon's salespeople, including Defendants Perez and Feltz, as well as developing and maintaining Transcon's working relationship with Defendant SP. *Id.* ¶¶ 36–38, 82. Husslein continued in an analogous role post-acquisition until October 1, 2025 when he executed an agreement with Radiant to be promoted to General Manager, ORD. *Id.* ¶ 36. Defendants Perez and Feltz were hired at Transcon in 2008 as salespeople and account leads in the Midwest region. [1] ¶ 3738. Both individuals served in customer-facing roles and their responsibilities included developing and maintaining relationships with Transcon's customers through sales and account management. *Id.* ¶¶ 37–38. Both continued in their roles after Radiant's acquisition of Transcon. *Id.*

2

¶¶ 37–38. According to Radiant, each of the Individual Defendants have confidential information and trade secrets about Transcon's network of international agents and customers as well as how Transcon conducts its freight forwarding operations. *Id.* ¶¶ 39–41.

A condition to Radiant's purchase of Transcon was Husslein's, Perez's, and Feltz's execution of confidentiality and non-solicitation agreements with Radiant. [17] at ¶ 43. Each of the Individual Defendants executed offers of employment with Radiant in addition to confidentiality and non-solicitation agreements. *Id.* ¶ 45. Defendant Husslein also signed a Phantom Equity Participation Agreement to which a non-solicitation, non-competition, and confidentiality agreement was attached that Husslein also executed. *Id.* ¶¶ 54, 62–63. These agreements prohibit divulging or using confidential information, as defined by the agreements, during and after employment with Radiant as well as prohibiting the direct and indirect solicitation of customers or prospective Radiant customers for 12 months after the termination of the Individual Defendants' employment with Radiant. *Id.* ¶¶ 64, 66–67, 74, 76.

SP is a customs house brokerage in the Chicagoland area that assists freight forwarders, including Transcon, with customs operations. [17] ¶ 82. SP Shipping was founded in October 2025 and is the "freight forwarding division" of SP. *Id.* ¶¶ 84–85. Radiant contends SP has poached Transcon's employees to replicate its business by using Transcon's confidential information, network of international agents, and customer base. *Id.* ¶89. The Individual Defendants resigned from Radiant in January 2026. *Id.* ¶¶ 90, 92. Perez and Feltz are currently employed by SP Shipping and

3

Husslein has been seen visiting their offices. *Id.* Since working at SP Shipping, Perez and Feltz have contacted Transcon customers and agents to solicit their business and Transcon has lost business from customers that the Individual Defendants previously served. *Id.* ¶¶ 94–97, 100–104.

Radiant brought this suit against the Defendants alleging (1) the Individual Defendants breached their non-competition (Husslein) as well as their employee and customer non-solicitation restrictive covenants; (2) the Corporate Defendants tortiously interfered with the Individual Defendants' contracts containing the at-issue restrictive covenants; and (3) all Defendants conspired to start SP Shipping and duplicate Transcon's business through improper means, including overt breaches of restrictive covenants. [17] ¶¶107–91. Before the Court now is Radiant's motion for a temporary restraining order. [4]. Radiant seeks injunctive relief prohibiting the Individual Defendants from engaging in conduct violative of their respective agreements with Radiant.

## STANDARD

A temporary restraining order ("TRO") is "an extraordinary remedy [that is] never awarded as of right." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (internal quotations omitted). A TRO is therefore a form of preliminary relief used "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) (quoting *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir.1988)). In the Seventh Circuit, the standards for a TRO and a preliminary injunction are functionally

4

identical. *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 WL 3960451, at \*4 (N.D. Ill. July 13, 2020).

The party seeking a TRO must make an initial threshold showing that: (1) it has some likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) traditional legal remedies would be inadequate. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Demonstrating a likelihood of success is "a significant burden," though "at such a preliminary stage, the applicant need not show that it definitely will win the case." *Id.* (noting that the "better than negligible" standard has been retired). "A 'strong' showing thus does not mean proof by a preponderance…[b]ut it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. If the moving party fails to demonstrate "any one of the[] three threshold requirements, [the court] must deny the injunction." *Girl Scouts of Manitou,* 549 F.3d at 1086.

If the moving party makes the initial showing, the court then balances the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id*. "This Circuit employs a sliding scale approach for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of*

*Westfield*, 922 F.3d 357, 364 (7th Cir. 2019), *cert. denied sub nom.* 140 S. Ct. 268, 205 L. Ed. 2d 137 (2019) (internal citations and quotations omitted). Finally, the court asks "whether the [TRO] is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). "Ultimately, the moving party bears the burden of showing that a [TRO] is warranted." *Id.*

## ANALYSIS

### I. Irreparable Harm and No Inadequate Remedy at Law

The second and third threshold showing Radiant must make is that it will suffer irreparable harm if a temporary restraining order is not granted and that any remedy at law would be inadequate. *Girl Scouts of Manitou*, 549 F.3d 1086. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Harm is irreparable if legal remedies available to the movant are seriously inadequate as compared to the harm suffered. *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). The Court begins its analysis here because it is likely to be dispositive. *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440–41 (7th Cir. 1986) (affirming denial of a preliminary injunction based on the absence of irreparable harm alone). Radiant has not shown that it has no adequate remedy at law or that it will suffer irreparable harm unless a temporary restraining order is issued.

As an initial matter, the Court recognizes that the agreements at issue

6

containing the restrictive covenants also include various provisions stipulating irreparable harm. [17] ¶ 78. While the parties do not focus on this issue, courts across the country have minimized the importance of such clauses. *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1074 n.14 (N.D. Ill. 2020) (collecting cases). So too here.

Radiant claims absent a temporary restraining order, it will be irreparably harmed such that it will have no adequate remedy at law. [5] at 14–15. Plaintiff offers three reasons as to why it faces irreparable harm. First, Radiant contends revenue lost due to Defendants' interference is not easily predictable. *Id.* at 14–15. Second, Radiant argues its investment over 29 years in developing relationships with international agents, carriers, and customers with which the Defendants seek to interfere is incalculable. *Id.* at 14. And third, Plaintiff asserts the loss of goodwill stemming from lost customers cannot be measured. *Id.* at 15.

### a. Lost Revenue and Business Opportunities

Excluding exceptional circumstances, lost profits generally do not constitute irreparable injury. *Bidi Vapor, LLC v. Vaperz LLC*, 543 F.Supp.3d 619, 632 (N.D. Ill. 2021) (citing *Downstate Stone Co. v. United States*, 651 F.2d 1234, 1241 (7th Cir. 1981)). "[H]arm stemming from lost customers or contracts may be quantifiable if the lost customers or contracts are identifiable." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). Even with imperfect data, harm can be quantifiable if the parties "can reasonably estimate the value of lost profits." *DM Trans*, 38 F.4th 620.

Plaintiff argues its lost sales are not quantifiable because customer shipments vary based on numerous factors including but not limited to customer needs and geopolitical issues such as tariffs and international trade structures. [5] at 14–15. Radiant contends the harm it has and will continue to suffer absent intervention is dissimilar from a case with fixed fee contracts that are cancelled and can be easily priced. *Id.* Defendants respond Plaintiff's claims are all grounded in potential lost profits from specific customers and Radiant can easily calculate its own costs as well as expected net and gross profits. [15] at 21.

Here, Radiant can reasonably identify its customers and therefore can calculate the extent to which they shifted their business to SP Shipping following the Individual Defendants' departure from Transcon. In particular, Radiant alleged five specific customers canceled their current or forthcoming orders with Transcon and, upon information and belief, transferred those shipments to SP Shipping. [17] ¶¶ 101–04. Additionally, Radiant can identify each of the customers the Individual Defendants serviced. *Id.* ¶¶ 27, 51–53 (alleging Individual Defendants collectively serviced approximately 195 customers out of Transcon's over 850 customers). By using customer records the parties maintain, Radiant can discern the sales each of the Individual Defendants made and determine which customers were affected by the alleged breach of the restrictive covenants. This is a straightforward method for quantifying the financial harm to Radiant. Thus, the Court finds the losses to be calculable.

Radiant has not meaningfully contested the quantifiability of those losses.

8

Plaintiff argues that it will be difficult to calculate the financial losses traceable to Defendants' ongoing conduct because it cannot prove how long a repeat customer might stay with Transcon or whether customers would increase their business with Transcon but for Defendants' breach. [5] at 15–16. But a reasonable estimate is not beyond reach here. *See DM Trans*, 38 F.4th at 620 (citing *Lawson Prods.*, 782 F.2d at 1440). Radiant's difficulties in determining exact damages does not mean monetary damages are inadequate to cure the alleged harm. *See Life Spine*, 8 F.4th at 545 ("Harm is irreparable if legal remedies are inadequate to cure it. Inadequate 'does not mean wholly ineffectual: rather, the remedy must be seriously deficient as compared to the harm suffered.'") (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). These circumstances differ from those in *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005), upon which Radiant relies. In *Hess Newmark*, the Seventh Circuit determined it was not fatal that the plaintiff could not show any particular business was lost due to the entrepreneur defendants' breaching conduct because the increased competition was a sufficient basis for injunctive relief. 415 F.3d at 632–33. But here, Radiant can identify customers who transferred business to SP Shipping. Accordingly, *Hess Newmark* is distinguishable. *DM Trans*, 38 F.4th at 619 (explaining the same).

### b. Industry Relationships

Radiant also argues it is impossible to price the value of Transcon's 29-year investment in its relationships with international agents and carriers that will be destroyed or eroded by Defendants' breaching conduct absent injunctive relief. [5] at

14. Radiant does not expound on its conclusory allegations of lost opportunities when employees switch companies. But changes to these industry relationships do not support a showing of irreparable harm under the circumstances presented here. *See DM Trans*, 38 F.4th at 619–20 (holding that "lost opportunities" that translate into lost profits cannot support a showing of irreparable harm.) "The type of harm [Radiant] alleges would ultimately translate into lost profits." *See id.*

To the extent Radiant contends these relationships and the knowledge upon which they are based are akin to confidential information (though the Court notes much of this information can be gleaned from the non-parties), that reasoning fails too. The Seventh Circuit has clarified that a former employee's use of confidential information is not independently sufficient to establish irreparable harm. *DM Trans*, 38 F.4th 621. Even if Plaintiff established that the Individual Defendants unlawfully misappropriated confidential information, Radiant must show a threat of future irreparable harm, *i.e.,* not merely lost profits relating to identifiable customers, which it has not done. *See id.*

### c. Customer Goodwill

Finally, the Court turns to Radiant's assertion that it will lose customer goodwill without intervention. [5] at 15. Loss of customer relationships and harm to customer goodwill may constitute irreparable injuries under particular circumstances. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (consumer goodwill); *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509–10 (7th Cir. 1994) (opportunities to maintain and develop customer relationships);

*Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012) (goodwill and reputation). Those circumstances are absent here.

Radiant fails to explain how its goodwill or reputation will falter or how its business relationships will be damaged or destroyed. The evidence presented does not make this clear. Perez's and Feltz's emails let customers know they had taken a new opportunity at SP Shipping and recruited those customers to transfer their business too. Even if successfully soliciting customers, Perez and Feltz are not disparaging their former employer. Radiant has not shown likely customer confusion (*see e.g.*, *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 902 (7th Cir. 2001)), reputation damage (*see e.g.*, *Life Spine*, 8 F.4th 546), impairment in ability to provide services (*see e.g.*, *Girl Scouts of Manitou*, 549 F.3d at 1088–89), interference with niche contracts (*see e.g.*, *Life Spine*, 8 F.4th 546), change to its business model (*see e.g.*, *Stuller*, 695 F.3d at 680), or other harms courts have found to be irreparable.

Even if Radiant had shown such harms, it failed to show incalculability. *See Lawson Prods.*, 782 F.2d at 1441 (loss of goodwill could be "adequately compensated in lost profit damages"). To establish that loss of customers or market share amounts to irreparable harm, the party seeking the injunction must point to actual evidence, not just speculation, demonstrating the likelihood of those losses. *See McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 748–49 (N.D. Ill. 2010). Radiant has not done so.

Accordingly, the Court finds that Radiant has not shown sufficient evidence that there is an incalculable harm. Plaintiff's alleged harms are economic and can be

11

explored through discovery and redressed with final judgment: "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90; *D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016) (concluding the standard for irreparable harm was not met because money damages could make plaintiff whole if she succeeded on her claim).

## CONCLUSION

For the stated reasons, Radiant's motion for a temporary restraining order [4] is denied.

E N T E R:

Dated: March 16, 2026

_____
MARY M. ROWLAND
United States District Judge

12