**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Radiant Global Logistics, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Schmidt, Pritchard & Co., SP Shipping, LLC, Michael Husslein, Adrian Perez, and James Feltz<br><br>Defendants. | Case No. 26-cv-01600<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Radiant Global Logistics, Inc. ("Radiant") sues Defendants Michael Husslein ("Husslein"), Adrian Perez ("Perez"), and James Feltz ("Feltz") (collectively "the Individual Defendants"), and Defendants Schmidt, Pritchard & Co. ("SP") and SP Shipping, LLC ("SP Shipping") (collectively "the Corporate Defendants"). Defendants move to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff moves for leave to file a second amended complaint under Federal Rule of Civil Procedure 15(a).

For the reasons stated herein, Defendants' motion to dismiss is mostly denied, and Plaintiff's motion for leave to file Second Amended Complaint is granted.

## BACKGROUND

Radiant is a global transportation and supply chain management company. [17] at ¶ 17. On March 1, 2025, Radiant acquired Transcon Shipping Co., Inc. ("Transcon") and now operates Transcon as a wholly owned subsidiary. *Id.* at ¶ 18. Transcon is a

freight forwarder. *Id.* at ¶ 19. In other words, Transcon operates as an international "travel agent for its customers' freight, handling the logistics, documentation and compliance, and clearance processes." *Id.* The freight forwarding business operates through relationships with international agents, carriers, and customs house brokerages. *See id.* at ¶¶ 20–26. Transcon built these relationships over its 29 years in business, and many customers have used Transcon's services for decades. *Id.* at ¶ 20. Transcon has invested substantial resources in procuring and retaining these customers. *Id.* at ¶¶ 30–31.

Defendant Husslein was hired at Transcon in 2004 as a Director of Sales for the Midwest Region. *Id.* at ¶ 36. He transitioned to Director of Sales for the East Region in 2016, and was promoted to Assistant Vice President, Marketing in 2022. *Id.* Husslein's responsibilities included overseeing Transcon's salespeople, including Defendants Perez and Feltz, as well as developing and maintaining Transcon's working relationship with Defendant SP. *Id.* at ¶¶ 36–38, 82. Husslein continued in an analogous role at Radiant after the acquisition until October 1, 2025, when he was promoted to General Manager, ORD. *Id.* at ¶ 36. Defendants Perez and Feltz were hired at Transcon in 2008 as salespeople and account leads in the Midwest region. *Id.* at ¶ 37–38. Both served in customer-facing roles and their responsibilities included developing and maintaining relationships with Transcon's customers through sales and account management. *Id.* Both continued in their roles after Radiant's acquisition of Transcon. *Id.*

According to Radiant, each of the Individual Defendants have confidential and

trade secret information about Transcon's network of international agents and customers, and how Transcon conducts its freight forwarding operations. *Id.* at ¶¶ 39–41. As such, a condition of Radiant's purchase of Transcon was that Husslein, Perez, and Feltz sign confidentiality and non-solicitation agreements. *Id.* at ¶ 43. Perez, Feltz, and Husslein executed offers of employment with Radiant that contained confidentiality and non-solicitation agreements. *Id.* at ¶¶ 45, 73. In addition to an employment contract, Defendant Husslein also signed a Phantom Equity Participation Agreement (the "PEPA Agreement") which had a non-solicitation, non-competition, and confidentiality agreement attached. *Id.* at ¶¶ 54, 62–63. The confidentiality agreements prohibit the Individual Defendants from divulging or using confidential information, as defined by the agreements, during and after their employment with Radiant. *Id.* at ¶¶ 64, 74. The non-solicitation agreements prohibited the direct and indirect solicitation of Transcon's customers and employees for a period of time (12 months for Perez and Feltz, and three years for Husslein) after the termination of the Individual Defendants' employment with Radiant. *Id.* ¶¶ 67, 76. The PEPA Agreement also prohibited Husslein—for a period of six months after his employment with Radiant—from working for an entity that competes with Transcon and is located within 250 miles of any Transcon location. *Id.* at ¶ 66.

SP is a customs house brokerage in the Chicago area that assists freight forwarders, including Transcon, with customs operations. *Id.* at ¶ 82. SP Shipping was founded in October 2025 and is the "freight forwarding division" of SP. *Id.* at

¶¶ 84–85. Radiant alleges SP poached Transcon employees to replicate its business by using Transcon's confidential information, network of international agents, and customer base. *Id.* at ¶ 89. The Individual Defendants resigned from Radiant in January 2026. *Id.* at ¶¶ 90, 92. Perez and Feltz are currently employed by SP Shipping and Husslein has been seen visiting their offices. *Id.* Since working at SP Shipping, Perez and Feltz have contacted Transcon customers and agents to solicit their business and Transcon has lost business from customers that the Individual Defendants previously served. *Id.* at ¶¶ 94–97, 100–104.

Radiant brought this suit against the Defendants alleging (1) the Individual Defendants breached their non-competition and non-solicitation restrictive covenants; (2) the Corporate Defendants tortiously interfered with the Individual Defendants' contracts containing the at-issue restrictive covenants; and (3) all Defendants conspired to start SP Shipping and duplicate Transcon's business through improper means. *Id.* at ¶¶107–91.

Before the Court are Defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), [26], and Plaintiff's motion for leave to file a second amended complaint under Federal Rule of Civil Procedure 15(a). [43]. The Court's ruling as to each of these motions is set forth below.

**STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir.2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court "construe[s] all well-pleaded facts and draw[s] all inferences in the light most favorable to the nonmoving party." *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir.2014).

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend pleadings "when justice so requires." *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (noting that Rule 15(a)(2) takes a "liberal approach to granting leave to amend") (*quoting Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018)). Courts may, however, deny leave to amend "where there is a good reason to do so: 'futility, undue delay, prejudice, or bad faith.'" *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020) (*quoting Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 417 (7th Cir. 2019)). A proposed amended complaint is futile "when it merely restates the same facts using different language, or reasserts a claim previously determined," or "when it fails to state a valid theory of liability or could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (cleaned up).

## ANALYSIS

## I. Motion to Dismiss First Amended Complaint

In its First Amended Complaint ("FAC"), Radiant brought seven breach of contract claims against the Individual Defendants for alleged violations of their non-competition and non-solicitation agreements, a tortious interference claim against SP and SP Shipping, and a civil conspiracy claim against all Defendants. [17] at ¶¶ 107–191. Defendants argue that each breach of contract claim should be dismissed because the restrictive covenants Husslein, Perez, and Feltz signed are unenforceable. [26] at 4–14. First, Defendants argue that each covenant is void under the Illinois Freedom to Work Act. *Id.* at 4–7, 11–12. Second, Defendants argue that the restrictive covenants are unreasonable, and therefore unenforceable, because they serve no legitimate business purpose and are overbroad. *Id.* at 7–8, 12–14.

Defendants also argue that Radiant has failed to state a claim against Husslein for breach of contract where it failed to allege a breach, and Radiant failed to state a claim against SP where it failed to allege sufficient evidence to separate the corporate entities of SP and SP Shipping. *Id.* at 15–18. Finally, Defendants argue Radiant's tortious interference claim should be dismissed where the restrictive covenants at issue are unenforceable. *Id.* at 18–19. The Court addresses each argument in turn.

### A. Illinois Freedom to Work Act

First, Defendants argue the restrictive covenants Husslein, Perez, and Feltz signed are void under the Illinois Freedom to Work Act. [26] at 4–7, 11–12. The Illinois Freedom to Work Act ("IFWA") governs the use of non-solicitation and non-competition covenants in Illinois. 820 ILCS 90/1. IFWA provides that a covenant not

to compete or solicit is "illegal and void unless (1) the employer advises the employee in writing to consult with an attorney before entering into the covenant and (2) the employer provides the employee with a copy of the covenant at least 14 calendar days before the commencement of the employee's employment or the employer provides the employee with at least 14 calendar days to review the covenant." 820 ILCS 90/20. "An employer is in compliance with this Section even if the employee voluntarily elects to sign the covenant before the expiration of the 14-day period." *Id.* Defendants argue that Radiant failed to comply with these requirements and that, therefore, the restrictive covenants Husslein, Perez, and Feltz signed are void. [26] at 4–7, 11–12.

As a threshold matter, the parties agree that the restrictive covenants Perez and Feltz signed as part of their employment contracts are subject to IFWA. The parties disagree, however, about whether IFWA applies to the PEPA restrictive covenants that Husslein signed. Radiant argues the PEPA restrictive covenants are not subject to IFWA because they were ancillary to the sale of a business, rather than ancillary to an employment agreement. [17] at ¶¶ 110, 119, 127, 195; [30] at 7–10. Defendants, by contrast, argue the PEPA Agreement was akin to a bonus that rewarded Husslein for his work as a Transcon employee, making the restrictive covenants ancillary to an employment relationship. [26] at 9–11.

Restrictive covenants that are ancillary to the sale of a business are subject to a more lenient standard than covenants ancillary to an employment agreement. *GFRB, LLC v. Worthy Promotional Products, LLC*, 746 F.Supp.3d 540, 557 (N.D. Ill. 2024). "[N]o specific test has been established for determining whether a noncompetition

agreement is ancillary to the sale of a business." *Health Pros., Ltd. v. Johnson*, 791 N.E.2d 1179, 1190 (Ill. App. 2003). But generally, where Illinois courts have found restrictive covenants to be ancillary to the sale of a business, the party to be bound is the seller of the business. *See Health Pros., Ltd*, 791 N.E.2d at 1185-86 (court found noncompetition agreement was ancillary to sale of a business where defendants were co-owners of a healthcare business that was sold); *Howard Johnson & Co. v. Feinstein*, 609 N.E.2d 930, 934 (Ill. App. 1993) (court found noncompetition agreements were ancillary to sale of a business where defendants owned, collectively, 10% of the purchased company); *Decker, Berta and Co., Ltd. v. Berta*, 587 N.E.2d 72, 73 (Ill. App. 1992) (court found restrictive covenant was ancillary to sale of a business where defendant owned 12.5% of the purchased company).

Here, Radiant acknowledges that Husslein, a longtime employee of Transcon, had no ownership interest in Transcon. [17] at ¶¶ 36, 55–56. Radiant alleges the PEPA Agreement allowed Husslein to be compensated "as if" he was an owner of Transcon and characterized the payment as an "equity-like award," rather than payment for actual equity Husslein owned. *Id.* at ¶¶ 55–56. In fact, the PEPA Agreement explicitly states that its purpose is to "reward [Husslein's] long-term service to the Company." [17-1] at 1. As such, the Court agrees with Defendants that the PEPA Agreement was more akin to an employee bonus. Therefore, IFWA applies to the non-competition and non-solicitation agreements Husslein executed.

Though IFWA applies to the restrictive covenants signed by Husslein, Perez, and Feltz, the Court cannot rule—at least at the pleading stage—that the agreements

violate IFWA's requirements. Under IFWA, an employer must (1) advise the employee in writing to consult with an attorney prior to signing a restrictive covenant, and (2) provide the employee with at least 14 days to review the covenant. 820 ILCS 90/20. Taking all allegations in the FAC as true and construing reasonable inferences in Radiant's favor—as the Court must at this stage—it is at least plausible that Radiant complied with these provisions. *See Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

Perez and Feltz's employment agreements contain an acknowledgement that they had "been given the opportunity to discuss this Agreement with [their] private legal counsel and have availed [themselves] of that opportunity to the extent [they] wish to do so." [17-2] at 15; [17-3] at 15. With respect to the PEPA Agreement, Radiant alleges Husslein "had sufficient time prior to execution to review, consider, and consult with counsel." *Id.* at ¶ 60. Defendants argue that each restrictive covenant is void because the agreements do not include an explicit, written advisory to consult with an attorney before signing. [26] at 5, 11–12. However, even if the agreements do not explicitly advise Husslein, Perez, and Feltz to consult an attorney, IFWA's "plain language does not require the written advisory to be in the contract itself," which "suggests extrinsic evidence may be needed to determine [Radiant's] compliance with that provision." *MSR Technology Group, LLC v. VistalTech, Inc.*, 2025 WL 1744730, at * 4 (N.D. Ill. 2025). As such, the Court cannot determine at the pleading stage that Radiant failed to comply with IFWA's requirement that it advise Husslein, Perez, and Feltz in writing to consult with an attorney prior to signing the restrictive covenants

at issue.

Likewise, the Court cannot conclude that the time-to-review requirement was not met. Perez's employment agreement is dated March 3, 2025, and was signed the same day. [17-2] at 2, 4, 16. Feltz's employment agreement is dated February 24, 2025, and was signed on March 3, 2025. [17-3] at 2, 4, 16. Defendants argue that the dates of execution prove that Radiant failed to comply with IFWA's requirement that the employee be given 14 days to review any restrictive covenants. However, an employer does not violate IFWA "if the employee voluntarily elects to sign the covenant before the expiration of the 14-day period." 820 ILCS 90/20. Here, Radiant alleges though Perez and Feltz "elected to execute their agreements prior to fourteen days after receipt, Radiant [ ] did not require signatures prior to the conclusion of the fourteen-day period required by 820 ILCS 90/20." [17] at ¶ 73. In addition, Radiant alleges Husslein "had sufficient time prior to execution [of the PEPA Agreement] to review, consider, and consult with counsel." *Id.* at ¶ 60.

Taking these allegations as true, Radiant has plausibly alleged compliance with these provisions of IFWA. As such, Defendants' motion to dismiss the breach of contract claims against the Individual Defendants on the grounds that the restrictive covenants are void under IFWA is denied.

**B. Reasonableness**

Next, Defendants argue that the restrictive covenants at issue are unreasonable, and therefore unenforceable, because they serve no legitimate business interest and are overbroad. [26] at 7–8, 12–14. Under Illinois law, a restrictive covenant is

reasonable only if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promissee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011). "Importantly, the reasonableness of a restrictive covenant is determined 'based on the totality of the facts and circumstances of the individual case.'" *Maximum Indep. Brokerage, LLC v. Smith*, 218 F.Supp.3d 630, 637 (N.D. Ill. 2016) (quoting *Reliable Fire*, 965 N.E.2d at 396).

"Factors that may be considered in this analysis include, but are not limited to, the employee's exposure to the employer's customer relationships or other employees, the near-permanence of customer relationships, the employee's acquisition, use, or knowledge of confidential information through the employee's employment, the time restrictions, the place restrictions, and the scope of the activity restrictions." 820 ILCS 90/7. "No factor carries any more weight than the other, but rather its importance will depend on the specific facts and circumstances of the individual case." *Id.*

Where the reasonableness of a restrictive covenant is subject to such a fact-specific inquiry, "unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record." *Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *5 (N.D. Ill. 2015). Courts in this district have declined to make such a fact-based determination at the motion to dismiss stage. *Nortek Products Ltd. v. FNA Grp., Inc.*, 2011 WL 2110043, at *4 (N.D. Ill. 2011) (whether the restrictive covenants "are reasonable [ ] requires the Court to make a fact-based

determination that is not appropriate at the motion-to-dismiss stage"); *Restaurant.Com, Inc. v. Savad*, 2008 WL 3992695, at *3 (N.D. Ill. 2008) (holding that whether a restrictive covenant is reasonable is a fact-based determination not appropriate at the motion-to-dismiss stage); *Integrated Genomics, Inc. v. Kyrpides*, 2008 WL 630605, at *6–8 (N.D. Ill. 2008) (same); *AutoMed Tech., Inc. v. Eller*, 160 F.Supp.2d 915, 923 (N.D. Ill. 2001) (same).

Radiant argues that Husslein's non-competition covenant is reasonable because it applies for only a limited period of time (two and a half years after closing or six months after Husslein's employment) and is restricted geographically to competing freight forwarding businesses within 250 miles of Radiant's operating locations. [17] at ¶ 111. Radiant argues Husslein's non-solicitation agreement is reasonable where it is similarly limited in time and is limited to Transcon's customers and employees at the time Radiant purchased Transcon. *Id.* at ¶ 121. Radiant argues Perez and Fetlz's restrictive covenants are likewise reasonable where they serve Radiant's legitimate business interests in maintaining proprietary information and its near-permanent customer relationships. *Id.* at ¶¶ 76–77.

But the Court need not delve into the intricacies of these arguments at this time because, as the Illinois Supreme Court stated, reasonableness "depend[s] on the specific facts and circumstances of the individual case," and the specific facts of this case have yet to be developed. *Reliable Fire*, 965 N.E.2d at 403. Because the non-competition and non-solicitation agreements are not categorically unreasonable as a matter of law, Defendants' arguments are insufficient to defeat Radiant's claims at

the motion to dismiss stage. As such, Defendants' motion to dismiss the breach of contract claims against the Individual Defendants is denied.

### C. Breach by Husslein

Defendants argue the breach of contract claims against Husslein for alleged violations of the non-competition and non-solicitation agreements should be dismissed where Radiant fails to "plead any facts demonstrating that Husslein breached the covenants." [26] at 15. Where Radiant "need not plead 'detailed factual allegations' to survive a motion to dismiss," the Court finds that Radiant has plausibly alleged Husslein breached the restrictive covenants. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

Defendants note that Radiant does not allege Husslein is employed by SP or SP Shipping. [26] at 15. But the non-competition and non-solicitation agreements do not only prohibit Husslein from being employed by a Transcon competitor. The non-competition agreement prohibits Husslein from "engag[ing] in, participat[ing] in," "act[ing] as a consultant or advisor to," or "otherwise assist[ing] any person or entity" that engages in competitive business with Transcon. [17] at ¶ 66. The non-solicitation agreement prohibits Husslein—even in his personal capacity—from "counsel[ing] or attempt[ing] to induce" any Transcon employee or customer to work with a competitor. *Id.* at ¶ 67. As such, Radiant need not allege that Husslein is employed by SP or SP Shipping to plausibly allege Husslein breached the restrictive covenants.

The FAC alleges that Husslein was directly involved in SP Shipping's recruitment and hiring of Perez, Feltz, and Octavio Carrasco, another former

Transcon employee. *Id.* at ¶ 122. It also alleges Husslein participated in SP Shipping's solicitation of numerous Transcon clients, and direct competition with Radiant. *Id.* at ¶ 114, 130. Defendants argue these are conclusory allegations with no factual support. This reads the complaint too narrowly. Radiant alleged that on January 20, 2026, days after he resigned from Radiant, Husslein was observed visiting SP's offices. *Id.* at ¶ 90. Two days later, Radiant sent Husslein a letter reminding him of his post-employment obligations and asking him to confirm that he was not working with SP Shipping, had not participated in the solicitation of Radiant employees and customers, and had not breached his covenants. *Id.* Husslein declined. *Id.* Radiant also alleged that beginning in early February 2026—a few weeks after Husslein was seen at SP's offices—several Transcon customers previously serviced by Husslein moved their business to SP Shipping. *Id.* at ¶ 100. Taken together, these allegations support a plausible inference that Husslein breached the restrictive covenants. Defendant's motion to dismiss the breach of contract claims against Husslein on this basis is denied.

### D. Alter Ego Liability

Radiant brings two claims against SP: tortious interference with the Individual Defendants' restrictive covenants, and civil conspiracy. [17] at ¶¶ 172–191. Defendants argue Radiant fails to state a claim against SP because it fails to "allege sufficient facts to disregard the separate corporate entities of [SP] and SP Shipping." [26] at 17–18. Radiant argues the FAC sufficiently alleges alter ego liability. [30] at 19–20. Where alter ego liability is a fact-intensive analysis, resolution of Radiant's

claims against SP is inappropriate at the pleading stage.

"It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, director and officers and, generally, from other corporations with which it may be affiliated." *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981). "Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Id.* "In determining whether the requisite degree of control is maintained by one corporation over the affairs of another to justify disregarding their separate corporate identities, the Illinois courts have considered some of the following: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985).

As the *Van Dorn* factors demonstrate, "the alter ego analysis is fact-intensive and therefore, is inappropriate for resolution on a motion to dismiss." *Forge Indus. Staffing, Inc. v. De La Fuente*, 2006 WL 2982139, at *10 (N.D. Ill. 2006) (citing *Larson v. CSX Transp., Inc.*, 835 N.E.2d 138, 145 (Ill. App. 2005)). Accordingly, it is sufficient at this stage for Radiant to allege facts that plausibly support its contention that SP Shipping is an alter ego of SP. To that end, the FAC alleges SP and SP Shipping share

the same physical location. [17] at ¶ 85. William Helms serves as a Vice President and Director of SP while also managing SP Shipping, and Cindy Helms is identified on SP's website as a leader of both SP and of SP Shipping. *Id.* SP's website states that SP "launched" SP Shipping to serve as "the firm's freight forwarding division," and that, together, "[SP] and SP Shipping provide reliable, end-to-end freight solutions designed to keep your business moving forward." *Id.* Similarly, SP Shipping's website states that SP Shipping is "a freight forwarding division dedicated to the same professionalism and customer care that has defined [SP] for generations." *Id.*

These factual allegations are sufficient to allow Radiant's claims against SP to move forward. Defendants' motion to dismiss Radiant's claims against SP for failure to sufficiently allege alter ego liability is denied.

### E. Tortious Interference

Next, Defendants argue that Radiant fails to state a claim against SP and SP Shipping for tortious inference where, as it argues elsewhere in its motion, "none of the restrictive covenants . . . is valid or enforceable." [26] at 18–19. For the reasons articulated above, the Court does not find—at least at this stage of the case—that the restrictive covenants are unenforceable. As such, the Defendants' motion to dismiss Radiant's tortious interference claim is denied.

### F. Injunctive relief

Finally, Defendants move to dismiss Radiant's standalone claim for injunctive relief. [26] at 19–20. The Court agrees that Count X of the FAC should be dismissed. An injunction "is an equitable remedy, not a separate cause of action." *Walker v.*

*Bankers Life & Cas. Co.*, 2007 WL 967888, at *4 (N.D. Ill. 2007). As such, Radiant's claim for injunctive relief is dismissed with prejudice. The Court, however, expresses no opinion as to whether Radiant ultimately may be entitled to equitable injunctive relief.

## II. Motion for Leave to File Second Amended Complaint

Radiant seeks leave to file a Second Amended Complaint ("SAC") which would add claims against all Defendants for trade secret misappropriation, and breach of contract claims against Perez and Feltz based on the confidentiality and non-disclosure provisions of their restrictive covenants. [43] at 2. Defendants oppose Radiant's motion, arguing it is untimely, futile, and prejudicial. [49] at 1. For the reasons stated below, Radiant's motion is granted.

Motions to amend the pleadings filed after the deadline in a scheduling order has passed are governed by Federal Rules of Civil Procedure 15 and 16. Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." When making good cause determinations, the Court "primarily considers the diligence of the party seeking amendment." T*rustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (quotation omitted); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) ("[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case moving toward trial") (quotation omitted). Where good cause is established under Rule 16(b), the Court then applies Rule 15(a). *Alioto*, 651 F.3d at 719. Under Rule 15(a)(2), the moving party must seek the Court's leave to amend a complaint, which the Court

should "freely" grant "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Olech v. Vill. of Willowbrook*, 138 F.Supp.2d 1036, 1040 (N.D. Ill. 2000) (citation omitted). The Court may exercise its discretion to deny an amendment only "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

Defendants first argue that Radiant has failed to meet the "good cause" standard of Rule 16 by failing to exercise due diligence. [49] at 2–4. Radiant alleges it only learned about the bases for its new claims on May 18, 2026, in Defendants' answers to interrogatories. [44] at 9. Defendants argue Radiant "offers no excuse as to why it waited until September 28, 2026" to move to amend the complaint. [49] at 3. This is untrue. In its motion for leave to amend, Radiant explained that around the time it received the interrogatory answers it was in the process of changing counsel. [44] at 9. Radiant filed a motion for substitution of counsel on July 8, 2026, which was granted on August 19, 2026. *Id.* As such, Radiant filed the instant motion for leave to amend around one month after the substitution of new counsel. Accordingly, the Court finds Radiant exercised appropriate diligence in seeking amendment.

Next, Defendants argue Radiant's motion should be denied because they will be unduly prejudiced by the requested amendment. [49] at 4. The Court disagrees. Virtually all amendments result in some degree of prejudice to an opposing party due

to the potential for additional discovery and trial delay. *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999). "Undue prejudice occurs when the amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and when the additional discovery is expensive and time-consuming." *Id.* (quoting *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D. Ill. 1975)). Permitting Radiant to assert trade secret misappropriation and breach of contract claims will not unduly prejudice Defendants, where the claims are not entirely new and separate from the claims alleged in the FAC, do not add new parties, and require only minimal additional discovery.

The FAC brought claims against the Individual Defendants for alleged breaches of their restrictive covenants, a tortious interference claim against SP and SP Shipping for allegedly inducing the Individual Defendants to breach their restrictive covenants, and a civil conspiracy claim against all Defendants, where Radiant alleges Defendants "reached an agreement to start SP Shipping and duplicate Transcon through improper means." [17] at ¶¶ 107–191. The SAC would add breach of contract claims against Perez and Feltz for alleged violations of an additional restrictive covenant—confidentiality and non-disclosure—contained in the same employee agreements at issue in the FAC. [44] at 10. Additionally, the new trade secret claims are an extension of the tortious inference and civil conspiracy claims alleged in the FAC. *Id.* at 10–11. As such, the additional claims will not substantially expand the scope of discovery, nor should they "alter either party's

theory of liability or damages." *Guaranteed Rate, Inc. v. Rorvig*, 2023 WL 3652443, at *4 (N.D. Ill. 2023).

Finally, Defendants argue the Court should deny the motion to amend on futility grounds. Courts "may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Management, LLC*, 721 F.3d 865, 869 (7th Cir.2013); *see also Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir.1992) ("[A]n amendment may be futile when it fails to state a valid theory of liability or could not withstand a motion to dismiss."). The Court cannot determine based on the record before it that Radiant's proposed amendment would be futile.

Defendants argue Radiant "cannot prevail on its misappropriation of trade secret claims," where their "alleged trade secrets are not, in fact, confidential trade secrets." [49] at 5–8.[1] Defendants argue that Radiant's customer and agent information is publicly accessible, and therefore, not trade secret information. *Id.* Radiant, however, argues that it is relying on far more than the names of its customers and agents to support its claims. Specifically, the proposed SAC identifies eight categories of "trade secret assets," including:

> (1) the specific combination of international agents and customs brokers used to handle each of Transcon customer's shipments, (2) each customer's shipping lanes, freight volumes, seasonal needs, service preferences, and service requirements, (3) the identity of each customer's decision-makers, (4) the proprietary software used by Transcon to streamline import and export processes and manage freight forwarding operations including the custom configurations that Transcon caused to be implemented in the software, (5) the profit margins for each shipment type for each customer, (6) carrier rates and

[1] Defendants do not challenge the proposed SAC's additional breach of contract claims against Perez and Feltz on futility grounds.

> international agents' profit-share or handling fees, (7) volume-based discount structures, and (8) subsidization applied to specific customer accounts (together, the "Radiant Trade Secrets").

[44-1] at ¶ 262. Defendants argue none of this information "constitutes a trade secret [ ] because it is directly ascertainable from the customers themselves," but this is a factual dispute that cannot be resolved at the pleading stage. *See Guaranteed Rate, Inc.,* 2023 WL 3652443, at *4 (granting plaintiff's motion for leave to file second amended complaint where defendant's futility arguments "rely on factual disputes that are better addressed at a later stage of litigation"). As such, where the Court does not find Radiant's proposed amendment to be futile, its motion for leave to file Second Amended Complaint is granted.

## CONCLUSION

Defendants' motion to dismiss [26] is mostly denied. Count X of the First Amended Complaint is dismissed with prejudice. Plaintiff's motion for leave to file Second Amended Complaint [43] is granted. Plaintiff is to file Second Amended Complaint as a separate entry on the docket by November 20, 2026. Defendants to answer Second Amended Complaint by December 18, 2026.

E N T E R:

Dated: November 16, 2026

MARY M. ROWLAND
United States District Judge